The State v. Singleton.

---

### THE STATE OF KANSAS v. B. C. SINGLETON.

**No. 13,568.**  (74 Pac. 243.)

#### SYLLABUS BY THE COURT.

HOMICIDE—*Self-defense—Improper Instruction.*  In a prosecu-
tion for homicide, where the defendant relies upon a claim of self-
defense, and testifies that he shot the deceased because he be-
lieved himself in danger of receiving great bodily harm, it is error
to charge that to sustain this plea the accused must have believed
that he was in danger of his life, although in another paragraph
of the same instruction it is said that, "if one is pursued or as-
saulted in such a way as to induce in him a reasonable and well-
grounded belief that he is in actual danger of losing his life, or
receiving great bodily harm, under the influence of such appre-
hension he will be justified in defending himself, whether the
danger be real or only apparent."

Appeal from Kingman district court;  P. B. GILLETT,
judge.  Opinion filed November 7, 1903.  Reversed.

*W. M. Wallace,* for The State.
*Fairchild & Calkin,* for appellant.

The opinion of the ·court was delivered by

MASON, J.:  B. C. Singleton was prosecuted on a charge of murder and convicted of manslaughter in the first degree, from which conviction he appeals. The evidence of the state shows that Singleton and one Art. Rickard met in the street.  Rickard accused Singleton of having once come out to his father's place to kill him, and at the same time struck him with his fist.  Singleton denied the accusation and of fered to explain.  Rickard said that he did not want him to explain, called him a vile name, with accompanying profanity, and struck him again.  Two bystanders then interfered, one seeking to restrain Rickard, the other Singleton.  Singleton stepped back some fifteen feet, Rickard following, pulling the bystander along with him.  Singleton then drew a revolver and shot Rickard, death resulting almost immediately.  At the trial Singleton relied for aquittal on a claim that the killing was done in self-defense. He testified that when he fired he apprehended a design on the part of Rickard to do him great bodily harm ; that he believed himself to be in great danger from him ; that he did not know whether or not Rickard had anything on his fist when he struck him ; that he was afraid of one of the bystanders, because appearances indicated that he was holding him for Rickard to do him some great bodily harm ; that he was afraid his life was in danger ; that he shot at Rickard to keep him off from him—keep him from doing him bodily harm—hurting him.

Objection is taken to the sufficiency of the information, but the criticisms made are not well founded. As was said of a less formal pleading in *The State v. McGaffin*, 36 Kan. 315, 319, 13 Pac. 560, "the charge

which it contains is brief, but we think it states in plain and concise language every element of the crime.'' An instruction was asked and refused stating that no conviction could be had if any juror, after full consideration of the law and evidence, entertained a doubt of the defendant's guilt.   The instruction in the form asked was defective in making no reference to consultation with fellow jurors.   Afterward the instruction was submitted by the defendant in correct form, but as this was after the opening argument to the jury the request came too late to make its refusal error. Other instructions asked were either properly refused or covered by instructions that were given.

It is further objected that the evidence did not warrant a conviction of manslaughter in the first degree, because there was nothing from which the jury could find that the defendant was engaged in the perpetration of, or attempt to perpetrate, any crime less than a felony, this being an essential element of that offense.   The same contention was made in *The State v. Spendlove*, 47 Kan. 160, 28 Pac. 994, but it was there decided that assault and battery is one of the misdemeanors covered by the statute defining manslaughter in the first degree.   The instructions, however, in addition to defining assault and battery, should have informed the jury that it is an offense less than a felony.

The most serious objection urged, however, is to the giving of instruction No. 33, which reads as follows :

''Concerning this question, you are instructed that positive danger is not necessary or indispensable to justify self-defense.   If one is pursued or assaulted in such a way as to induce in him a reasonable and well-founded belief that he is in actual danger of losing his life, or receiving great bodily harm, under the influence of such apprehension he will be justified in defending himself, whether the danger be real or only

apparent. Men, when threatened with danger, must determine from the appearances, and the actual state of things surrounding them, as to the necessity of resorting to self-defense, and if they act from reasonable and honest convictions they will not be held responsable criminally for their mistakes in the exact extent of the actual danger, where other judicious men would be alike mistaken.

"So, in such cases as this, where the defendant relies upon the supposed necessity of killing as a justification or excuse, the rule to be applied is that the accused must have believed that he was in immediate and actual danger of his life from the deceased, and his belief must rest upon reasonable grounds, and the party from whom the danger is apprehended must be making some attempt to execute his design, or, at least, be in an apparent situation to do so, and thereby induce a reasonable belief that he intended to do so immediately."

Under the circumstances stated, it was not necessary to a complete defense that the defendant should have believed his life to be in danger; he is equally protected if he acted upon a reasonable belief that he was in danger of receiving great bodily harm. (*The State v. Petteys*, 65 Kan. 625, 70 Pac. 588.) It is therefore obvious that the second paragraph of the instruction quoted does not contain a complete and sufficient statement of the law, and if considered alone would necessarily be held erroneous. In other instructions language was used classing the fear of receiving great bodily harm with the fear of loss of life as a ground of self-defense. But it is well settled that in a criminal case an erroneous instruction upon a material matter cannot be rendered harmless by a correct statement of the law in another part of the charge. (*Carl Horne v. The State of Kansas*, 1 Kan. 42, 81 Am. Dec. 409).

But it is contended that the defective language quoted is aided by the first paragraph of the same in-

struction, where express mention is made of the right of self-defense based upon the fear of receiving great bodily harm.   The instruction is, of course, to be read and considered as a whole, but we cannot conclude that the defect of the second paragraph is cured by anything contained in the first.   The first paragraph merely professes to give a general statement of the law, introductory to its application to the facts of the case as given in the second paragraph.   The second paragraph purports to state the complete rule so far as it relates to the case under consideration, and therefore the omission of this important element cannot be cured by anything found elsewhere in the instructions.   The case is as completely within the rule stated as though the two paragraphs had been numbered as separate instructions.   Moreover, even the general statement of the first paragraph is only to the effect that fear of great bodily harm justifies one in defending himself, without indicating the extent to which such defense may be carried.   Defendant testified that he acted in fear of great bodily harm.   The defect in the instruction quoted was therefore manifestly prejudicial and requires a reversal.

The judgment is reversed, and the cause remanded with directions to grant a new trial.

All the Justices concurring.