No. 46,620

STATE OF KANSAS, *Appellee,* v. BOBBY N. ROBERSON, *Appellant.*

(499 P. 2d 1137)

Opinion filed July 19, 1972.

*Charles S. Scott,* of the firm of Scott, Scott, Scott & Jackson, of Topeka, argued the cause and was on the brief for the appellant.

*John H. Taylor,* County Attorney, argued the cause, and *Vern Miller,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, Bobby N. Roberson, was convicted of murder in the second degree. He was sentenced to be confined in the Kansas State Penitentiary for a term of not less than ten years. He has appealed from that judgment.

The setting for the tragedy was the 200 block on East Ninth

Street in Junction City, Kansas, an area where it was a common practice, so we are told, for people to assemble on Saturday for social purposes, especially when Saturday came at the last of the month. The date of the homicide was August 30, 1969; the time, shortly before 3:30 p. m.

Earlier that day the defendant and his wife had liberally partaken of alcoholic drink, winding up about noon at the Satalite Cafe where they purchased an additional fifth of scotch whiskey which they and some of their friends consumed, interspersed with portions of beer. Sometime after 2:30 Mrs. Roberson felt the urge of nature and finding the toilet facilities in use at the Satalite she proceeded, in the company of her husband, to the nearby business establishment of Tillie Polite, a place known to its patrons as the Polite Cafe.

As Mrs. Roberson threaded her way to the bathroom, she passed near a white man who, seated at the counter, was conversing with a colored acquaintance across the bar. This white worthy made a derogatory remark about Mrs. Roberson which was overheard and resented by her husband. A loud verbal encounter thereupon ensued, which appears to have been accompanied by certain physical manifestations such as pushing and the knocking off of hats.

At this point the proprietress took umbrage at the altercation and, belying the quality suggested by her surname, is reported to have pulled a pistol, at the point of which, after some show of profanity on both sides, she escorted Mr. Roberson and his wife to the door and precipitated their departure.

Repairing to his car, which was parked outside, the defendant told his wife to go down the street—that it seemed there was going to be trouble—and got his shotgun from the trunk of his car. He testified that he could see the decedent's shadow standing behind the door and did not know whether she was going to shoot or not; that when he stepped inside the door she fired, and he fired. Roberson's shot struck Tillie Polite in the neck and upper chest, knocking her to the floor and resulting in her premature demise.

After this exchange of gun fire the defendant departed the scene, first taking his wife to a friend's house and then driving around for a short time until stopped and taken into custody by a member of the highway patrol. The defendant claimed at first that he was Jimmie Roberson, Bobby's brother—which proved to be an ineffective artifice of short duration. Upon being given the *Miranda* warning, Mr. Roberson responded he did not wish to talk, and his

wishes in this regard were respected. However, shortly after other officers arrived on the scene Roberson approached one of them and said "I'm going to level with you, I'm Bobby Roberson." He also said that Tillie had a Luger and was going to shoot him; that he might be going to jail for a long time but was not going to the graveyard; and that "you've got to protect yourself."

A number of trial errors are asserted in the defendant's statement of points. The first claim of error relates to the refusal of the trial court to instruct the jury on first-degree manslaughter as a lesser included offense of murder, despite the defendant's request for an instruction of this nature.

First-degree manslaughter is defined in K. S. A. 21-407 (which has since been repealed), as follows:

"The killing of a human being without a design to effect death, by the act, procurement or culpable negligence of another, while such other is engaged in the perpetration or attempt to perpetrate any crime or misdemeanor, not amounting to a felony, in cases when such killing would be murder at the common law, shall be deemed manslaughter in the first degree."

Long ago this court determined that the misdemeanor which the statute contemplates may be an offense which is directed against the deceased victim himself, and that the term "misdemeanor" includes the offense of simple assault and battery. (*State v. Spendlove*, 47 Kan. 160, 28 Pac. 994; *State v. Bassnett*, 80 Kan. 392, 102 Pac. 461; *State v. Singleton*, 67 Kan. 803, 74 Pac. 243; *State v. Merriweather*, 136 Kan. 337, 15 P. 2d 425; *State v. Booker*, 200 Kan. 166, 434 P. 2d 801.)

It is also a rule of respectable lineage in this jurisdiction that where, in a criminal prosecution, the evidence is such as to support a finding of guilty of an offense lesser than but included within the more serious offense on which the accused is being tried, the trial court should instruct the jury as to the lesser included charge. As the rule relates to homicides, this court said in *State v. Fouts*, 169 Kan. 686, 221 P. 2d 841:

"In prosecutions for homicide it is the duty of the trial court to instruct the jury, not only of the offense charged but as to all lesser offenses of which the accused might be found guilty under the information and upon the evidence adduced, even though such instructions have not been requested or have been objected to." (Syl. ¶ 3.)

In the *Merriweather* case, the accused was charged with first-degree murder and the trial court, in its charge to the jury, included an instruction on first-degree manslaughter as a lesser included

offense. The defendant was convicted of manslaughter, and on appeal he assailed the giving of the instruction as error. In rejecting the contention, this court said:

". . . Defendant complains because manslaughter in the first degree was thus submitted to the jury. The evidence was susceptible of an interpretation warranting the instruction. It was not necessary that the 'crime or misdemeanor not amounting to a felony' should be independent of and separate from the homicide, and defendant would have had good ground to complain if the instruction had not been given. . . ." (p. 338.)

This language was quoted with approval in our more recent case of *State v. Booker*, supra.

In expounding the same principle in a somewhat earlier era the court, in *State v. McAnarney*, 70 Kan. 679, 79 Pac. 137, had this to say:

". . . So it has been repeatedly held that if there is slight evidence of a lower degree of an offense, although it may appear to the court to be weak and unsatisfactory, the question should be submitted to the jury, and a court is only justified in refusing to charge the jury on the lower degree of homicide when the testimony shows beyond question that the defendant is guilty of the higher offense. (Citing cases.)" (p. 686.)

Although the evidence as it might relate to first-degree manslaughter is far from overwhelming in this case, we consider it sufficient to have required the court to instruct upon the issue. The accused had been imbibing heavily during the day and there was evidence from which the jury might well infer that by 3:30 in the afternoon he was in a confused and maudlin state of mind. No prior animus toward Tillie Polite may be deduced from the record. On the contrary, it would appear the defendant had assisted the deceased in carrying some groceries that very morning and that the two of them had previously gone on fishing expeditions together.

There is testimony in the record that the deceased, with gun firmly in hand, had followed the defendant and his wife all the way to the door of the restaurant; that she opened the door and was standing on the step with her gun in hand; that as the defendant took his gun from the car—which required some three seconds—he could see her shadow standing behind the door and he didn't know whether she was going to shoot or not, but he knew she had the gun. There is evidence that two shots were fired, one being from Tillie's gun, and that the first shot fired was Tillie's.

We think the evidence is such that the jury might have concluded that the defendant in his maudlin condition did not intend to make a felonious assault upon the deceased, and did not mean

to discharge his weapon until after he was fired upon, but that he intended no greater show of force than that inherent in an unlawful assault. It is our opinion that an instruction on first-degree manslaughter should have been given in this case, and that the court's refusal to include such an instruction in its charge to the jury constituted error.

The defendant next attacks the sufficiency of the information on the ground that it does not allege the killing to have been committed maliciously. K. S. A. 21-402, the statute which was in effect when the instant homicide occurred, provides as follows:

"Every murder which shall be committed purposely and maliciously, but without deliberation and premeditation, shall be deemed murder in the second degree."

The information filed by the state fails to follow the plain and explicit language of the statute; it alleges only that Mr. Roberson unlawfully, feloniously and willfully killed Tillie Polite by shooting her with a gun. Consequently, the defendant argues, the information is deficient in that it fails to allege one of the essential ingredients of murder, to wit, malice.

A similar contention is made with respect to the court's instruction purporting to define second-degree murder. In general, the instruction follows the language contained in the information, and it charges the jury in essence that if Bobby N. Roberson "on purpose and willfully" shot and killed Tillie Polite and was not justified in using the force which he used, then the jury must find him guilty of murder in the second degree. Again, the element of malice is missing.

However, the state responds that the term "willfully" imports "malice"; that use of such term is sufficient to supply the element of malice and to cure whatever defect might inhere both in the information and in the instruction. Although language may be found in a good many cases which equates the terms "willful" and "malicious", this court is of the opinion that the word "willfully", as it relates to the crime of murder, is not the legal equivalent of "maliciously."

At common law the distinguishing characteristic of murder was the presence of malice, express or implied. This is made clear by all the ancient authorities as well as by more modern pronouncements, including many of our own. In the early case of *Craft v. State*, 3 Kan. * 450 [2d Ed. 447], the court stated that:

". . . The law makes malice a necessary ingredient in both degrees of murder, and it is the same thing whether shown to exist by one set of circumstances or another. Its existence, as a fact, must be proved on every charge of murder. The law never presumes its existence. . . ." (p. 486.)

The rule is again set forth in *State v. Smith,* 78 Kan. 179, 96 Pac. 39, in the following language:

"Malice is a material and important element in the crime of murder, and every defendant charged with that offense has the right to have the question of whether or not the act was actuated by malice submitted to the jury whenever there is evidence from which its absence can be inferred." (Syl. ¶ 1.)

See, also, *State v. Jensen,* 197 Kan. 427, 417 P. 2d 273, and the many authorities which are cited therein.

The eminent English jurist and authority on the common law, Sir William Blackstone, said of *malice aforethought:* "This is the grand criterion which now distinguishes murder from other killing: and this malice prepense, *malitia præcogitate,* is not so properly spite or malevolence to the deceased in particular, as any evil design in general; the dictate of a wicked, depraved, and malignant heart . . . and it may be either *express* or *implied* in law." (4 Bl. Comm. 198.) Expressions of similar import are to be found among our own decisions. (*State v. Yarborough,* 39 Kan. 581, 18 Pac. 474; *State v. Murray,* 83 Kan. 148, 160, 110 Pac. 103; *State v. Thomas,* 157 Kan. 526, 142 P. 2d 692.)

That willfulness is not to be equated with maliciousness in a case of this character is indicated in PIK 56.04, where the terms are defined as follows:

"(*a*) Maliciously
    Maliciously means wilfully doing a wrongful act without just cause or excuse.

.    .    .    .    .    .    .    .    .    .    .    .    .

"(*c*) Wilfully
    Wilfully means conduct that is purposeful and intentional and not accidental.'"

The latter definition is drawn from our statute, K. S. A. 1971 Supp. 21-3201 (2).

Cases from other jurisdictions have also recognized a distinction. In *Bundy v. State,* 114 Neb. 121, 206 N. W. 21, the Supreme Court of that state has said:

". . . Wilfully is not a synonym of unlawfully or maliciously or fraudulently. Bouvier in his Law Dictionary defines wilfully as 'distinguished from maliciously in not implying an evil intent. . . . It implies that the act is done knowingly and of stubborn purpose, but not with malice.' . . ." (p. 123.)

The New York Court of Appeals in *Anderson v. How*, 116 N. Y. 336, 22 N. E. 695, in comparing the two terms, distinguished them in this fashion:

". . . Willfulness is implied in maliciousness, but maliciousness is not implied in willfulness. . . ." (p. 342.)

To like effect the Supreme Court of New Mexico observed in *Rascoe v. Town of Farmington*, 62 N. M. 51, 304 P. 2d 575:

". . . 'Willfully' is not necessarily employed as a synonym of 'unlawfully' or 'maliciously' or 'fraudulently,' since, ordinarily, it does not embrace an evil intent. . . ." (p. 55.)

See, also, *Brown v. Brown*, 124 N. C. 19, 32 S. E. 320; *Parker v. Parker*, 102 Iowa 500, 71 N. W. 421.

One further complaint made by the defendant requires consideration. It relates to the trial court's instruction defining manslaughter in the third degree. K. S. A. 21-413, under which we assume the instruction was given, reads as follows:

"The killing of another in the heat of passion, without design to effect death, by a dangerous weapon, in any case except wherein the killing of another was justifiable or excusable, shall be deemed manslaughter in the third degree."

In the court's instruction setting out the elements of third-degree manslaughter no reference is found to the phrase "heat of passion." This element of the offense is entirely missing from the instruction. We believe the court was in error in omitting a constituent element of the offense which was explicitly set forth in the statute. The omission seems puzzling in view of the fact that a definition of the phrase is contained in a preceding instruction.

Other claims of error are urged, but we regard them as requiring no discussion in view of our disposition of the appeal.

The judgment of the court below is reversed with directions to grant the defendant a new trial in accordance with the views expressed in this opinion.