No. 47,172

STATE OF KANSAS, *Appellee,* v. BOBBY CHARLES OSBEY, *Appellant.*

(517 P. 2d 141)

Opinion filed December 8, 1973.

*Thomas E. Joyce,* of Kansas City, argued the cause and was on the briefs for the appellant.

*Nick A. Tomasic,* district attorney, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Bobby Charles Osbey was convicted by a jury of first degree (felony) murder. New trial was denied, sentence was imposed and Osbey now appeals.

Appellant and a codefendant, Nathaniel Reed, were tried in the same trial for commission of the offense in question.

On September 4, 1972, Dennis Ingram, a clerk at a U-Totem convenience market located at 746 Central, Kansas City, was killed during the course of a holdup. Prior to the robbery an area U-Totem supervisor came to this particular store at about 2:00 a. m. to collect money from the cash registers, so as to reduce the cash on hand, and to alert the employees to be on the lookout since another U-Totem store in the area had been robbed earlier that night.

While the supervisor was still present two men, later identified as appellant and Reed, entered the store. Reed purchased cigarettes and the two left. Due to suspicious actions of the pair. prior to their entry, the police were called. Police responded and searched the area but did not observe the men in question. They maintained a stake-out on the store for a time but this surveillance terminated when the officers were summoned elsewhere on another call.

Around 3:00 or 3:30 a. m. appellant and Reed reentered the store. Present were the clerk Ingram and three youths who had previously been there when Reed purchased cigarettes. Reed produced a revolver with black electrician's tape on the handle, held it on Ingram at the cash register and announced a holdup. Appellant took the money from the register and stuffed it into his pocket. Reed made a statement to the effect that this couldn't be all of it. Ingram replied there was no more money. Reed then pulled the hammer of his gun back and shot Ingram in the head,

causing his death. Appellant and Reed left the store warning those present not to call the police. However, one of the youths present in the store ran out ahead of them, flagged a passing patrol· car and informed the officers what had happened. These officers apprehended appellant and Reed shortly after leaving the store and while they were walking toward a parked 1964 Thunderbird automobile in which appellant's small son was sitting. A .22 caliber pistol with a taped handle, identified as the weapon carried by Reed, was found near the steps of the store. Found on appellant's person were a number of .22 caliber shells, coins and a loose wad of currency. The supervisor testified thirty dollars and some coins were missing from the cash register. Taken from appellant's pocket were $24.00 in bills, $4.00 in half dollars, $3.25 in quarters, $1.20 in dimes and 85 cents in nickels.

Upon apprehension the arresting officers gave a *Miranda* warning and later that morning separate lineups at the police station were conducted in which the three youths who were present in the store identified appellant as the one who took the money from the cash register.

Various state witnesses testified appellant appeared normal in his actions and did not appear to be intoxicated when they observed him on the morning in question. Appellant testified he was intoxicated and didn't remember anything which happened that week-end; he did not plan to rob a store or kill anyone. Also on appellant's behalf it was shown that he had had a drinking problem.

Other events and evidence will be related in connection with the specifications of error, to be dealt with in the order presented by appellant.

Appellant first contends he was not afforded a speedy trial. After preliminary hearing his bond was fixed by the magistrate court and he was bound over for trial in district court on September 14, 1972. Appellant was unable to furnish bond and thereafter remained in custody. Transcript of the proceedings before the magistrate was filed in district court September 15, 1972. An information was filed September 18, 1972. Appellant was arraigned October 20, 1972. Trial commenced January 16, 1973. Meanwhile no continuance had been sought or granted.

Appellant asserts that delaying commencement of his trial until

119 days after the time the information was filed contravenes the provisions of certain statutes decreeing speedy trial.

K. S. A. 1972 Supp. 22-3401 provides that all persons charged with crime shall be tried without unnecessary delay. K. S. A. 1972 Supp. 22-3402, as here pertinent, provides that any person charged with crime and held in jail by reason thereof shall be entitled to discharge if not brought to trial within ninety days after arraignment unless the delay shall happen as a result of his application or fault or unless continuance shall be ordered for specified reasons. K. S. A. 1972 Supp. 22-3206 provides:

*"Time of arraignment.* (1) A defendant charged with a felony in an information shall appear for arraignment upon such information in the district court not later than the next required day of court which occurs ten or more days after the order of the magistrate binding the defendant to appear in the district court for trial, unless a later time is requested or consented to by the defendant and approved by the court or unless continued by order of the court.

. . . . . . . . . . . .

"(3) In every judicial district, the judge or judges thereof shall provide by order for one or more required days of court each month in each county of the district, at which time a judge will be personally present at the courthouse for the purpose of conducting arraignments."

The statutes mentioned implement and define the constitutional guarantee of speedy trial under the circumstances indicated therein (see *State v. Sanders,* 209 Kan. 231, 495 P. 2d 1023).

Appellant has neglected to supply the information necessary to determine whether or not compliance has been had with the provisos contained in 22-3206 (1) and (3). Data furnished by appellee respecting the criminal calendar of the trial court reveals full compliance. The required arraignment dates fixed by court order for the period in question are shown to have been September 15, 1972, and October 20, 1972. As indicated, appellant was bound over September 14. Therefore the September 15 arraignment date would not have been ten days or more after the order binding him to appear in district court—indeed an information had not yet been filed in the latter court at that time. Necessarily, the sense of the statute is that a reasonable time must be afforded the magistrate and the prosecution for preparation of the paperwork requisite for transfer of a case to, and arraignment of a defendant in, the district court. Appellant was arraigned on the next regularly scheduled arraignment date, which was October 20, 1972, agreeable to the statute. Unnecessary delay is not shown. Trial was com-

menced within eighty-eight days from arraignment as mandated by 22-3402 (1). In short, pertinent statutes were fully complied with and speedy trial was not denied.

Appellant urges error resulted from certain remarks contained in the *voir dire* examination by the district attorney and by the attorney for the codefendant. There was no objection to the remarks at the time of their making, in fact, the complaint now raised was not brought to the attention of the trial court in any manner. The oft-repeated rule is, an issue not presented to the trial court cannot be a subject for appellate review (*Thierer v. Board of County Commissioners,* 212 Kan. 571, 512 P. 2d 343). Beyond this, the complaints, considered on their merits, would have to be dismissed as trivial.

Appellant next asserts the trial court erred in permitting the district attorney to mention in his opening statement that lineups had been held in which appellant had been identified and further in not suppressing evidence of those lineups, all because of absence of counsel. The state's evidence revealed such lineups were conducted shortly after commission of the offense. It appears both appellant and his codefendant signed waivers of presence of counsel at such lineups and that prior to trial attorneys for each expressly stated no challenge would be made to evidence of the lineups. The record reveals nothing improper in any way about the lineups. There was no indication of anything unnecessarily suggestive or conducive to mistaken identity in their conduct. However, a complete answer to appellant's two complaints lies in the fact the lineups were conducted prior to the initiation of adversary judicial proceedings. In *State v. Jackson,* 212 Kan. 473, 510 P. 2d 1219, we stated:

"In [*Kirby v. Illinois,* 406 U. S. 682, 32 L. ed. 2d 411, 92 S. Ct. 1877] the United States Supreme Court held the constitutional right to counsel did not attach until judicial criminal proceedings were initiated, and that the exclusionary rule relating to out-of-court identifications in the absence of counsel did not apply to identification testimony based upon a police station lineup which took place before the accused had been indicted or otherwise formally charged with any criminal offense." (pp. 473-474.)

See, also, *State v. McCollum,* 211 Kan. 631, 507 P. 2d 196.

Appellant complains the trial court erroneously sustained the prosecution's objection to certain questions put by him to the jury upon *voir dire* examination. The questions were premised upon

the trial court's possible instructions to the jury as to the elements of premeditation and malice aforethought. Our rule has always been that the extent of examination of jurors on *voir dire* rests largely in the discretion of the trial court and this court will not interfere unless abuse of discretion is clearly shown (*State v. Guffey*, 205 Kan. 9, 468 P. 2d 254). Appellant was prosecuted for felony murder (K. S. A. 1972 Supp. 21-3401), a crime in which proof that a homicide was committed in the perpetration of a felony (aggravated robbery here) is held tantamount to the premeditation and deliberation which otherwise would be necessary to constitute murder in the first degree (*State v. Lamb*, 209 Kan. 453, 497 P. 2d 275).

The ruling challenged really went to the elements of premeditation or deliberation embodied in counsel's questions, rather than to malice, and we cannot say the court ruled incorrectly. No prejudice is shown and clearly, abuse of discretion does not appear.

Appellant's next complaint relates to the omission of the year "1972" in the charging part of the information. As filed that document simply alleged that the offense occurred "on or about the 4th day of September". When this omission was noted during trial the court granted the prosecution leave to amend by inserting the figures "1972" after the words quoted above. These figures were never actually typed or written on the document in question. The complaint does not warrant disturbing the judgment. There is no statute of limitation for the offense of murder (K. S. A. 1972 Supp. 21-3106[1]), appellant well knew the year of the alleged offense, and, despite the fact the prosecution was derelict in not following through and formally making the amendment after its request to do so had been granted, has suffered no prejudice because of this simple clerical omission.

Appellant contends there was insufficient foundation laid to admit into evidence certain exhibits, including the slug removed from the body of the slain clerk, the gun and the money taken from appellant's pocket. The complaint is trivial and need not be labored. In *State v. Tillman*, 208 Kan. 954, 494 P. 2d 1178, the rule respecting the requisite chain of custody was stated:

"A party who offers an object into evidence must show that it is reasonably certain that there have been no material alterations of the object since it was first taken into custody. It is not necessary that the object should have been kept continuously under lock-and-key or continuously sealed up nor is it

necessary that all possibility of its being tampered with should be excluded." (Syl. ¶ 2.)

Sufficient foundation for the challenged exhibits was shown and they were properly received in evidence.

Appellant's complaint that the jury was forced, to his prejudice, to speculate on that which was depicted in a photograph of the victim offered by the prosecution is utterly frivolous. The photograph was excluded upon appellant's objection and the jury was instructed to disregard all exhibits not admitted into evidence.

Appellant asserts error derived from the testimony of the U-Totem supervisor that another store had been robbed earlier that night. In the testimony no effort was made to connect either appellant or his codefendant with the commission of this earlier crime. Moreover, no complaint respecting this point was ever made at trial level and, here again, the purported issue is not reviewable upon appeal.

We quote from appellant's brief his next point on appeal:

"The Court erred in not requiring the State to prove and in not instructing the jury to the effect that the State was required to prove beyond a reasonable doubt that defendant Osbey was sane at the time of the commission of the alleged offense or to show that defendant was sober and not on drugs for the State assumed that burden of proof in the opening statement of the District Attorney."

By way of argument appellant simply restates the foregoing.

It does not appear that appellant ever asserted the defense of insanity at trial nor was there compliance with the provisions of K. S. A. 1972 Supp. 22-3219 mandating service upon the prosecuting attorney of written notice of intention to rely on such a defense. There was an abundance of prosecution evidence to the effect appellant's actions appeared to be normal and that he was sober during and shortly after the holdup. Appellant testified he had been drinking and did not recall events of that night. Other evidence on his behalf indicated he had a drinking problem. However, there was no evidence of insanity. But for the fact appellant here did not raise the insanity issue in any way at trial (again it is one raised for the first time upon appeal), the factual situation is closely akin to that in *State v. Seely*, 212 Kan. 195, 510 P. 2d 115. There the defendant testified that because of his drinking he did not recollect any of the events surrounding commission of his alleged offenses

Refusal of his requested instructions on insanity was assigned as error. We reviewed the evidence and held:

"The instructions in a criminal case are to be confined to the issues in the case as determined by the charge in the information and the evidence adduced at the trial.

"Mental incapacity produced by voluntary intoxication, existing only temporarily at the time of the criminal offense, is no excuse for the offense, or defense to a prosecution for the offense. The test of insanity as affecting criminal responsibility, that the accused must have labored under such a defect of reason as not to know the nature or quality of the act, or, if he did know it, that he did not know he was doing wrong, does not apply to drunkenness.

"Temporary insanity immediately produced by intoxication does not destroy responsibility for crime where the accused, when sane and responsible, voluntarily made himself drunk." (Syl. ¶¶ 2, 3, & 4.)

Here the jury was instructed on voluntary intoxication as a defense substantially in accord with K. S. A. 1972 Supp. 21-3208, which provides:

*"Intoxication.* (1) The fact that a person charged with a crime was in an intoxicated condition at the time the alleged crime was committed is a defense only if such condition was involuntarily produced and rendered such person substantially incapable of knowing or understanding the wrongfulness of his conduct and of conforming his conduct to the requirements of law.

"(2) An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

The trial court did not err in the respects alleged.

Appellant contends the court's instructions respecting the material elements of murder were deficient in two respects. As to the first, we have already pointed out proof that a homicide was committed in the perpetration of a felony is held tantamount to the premeditation and deliberation which otherwise would be necessary to constitute murder in the first degree. Accordingly, the rule renders unnecessary the giving of a specific instruction defining premeditation and deliberation where the charge is felony murder.

Appellant further asserts the court in setting out the elements of felony murder erroneously failed to state that the killing was done willfully. The instruction given was substantially that found in PIK 56.02, Criminal, p. 114, for felony murder. It did include as one of the elements that the killing must be done maliciously. For his assertion of error appellant seizes upon an expression contained in *State v. Roberson,* 210 Kan. 209, 499 P. 2d 1137, that "the word

'willfully', as it relates to the crime of murder, is not the legal equivalent of 'maliciously' ". (p. 213.) Defendant Roberson was charged with second degree murder under our former criminal code, an element of which offense was that the killing be done maliciously. The information charged that the killing was done willfully but did not state it was done maliciously. In holding the information defective we rejected the prosecution's contention that the term "willfully" imports malice and the quoted statement relied upon by appellant was made in that context. Appellant would now have us accept the converse of the proposition—that the term "maliciously" does not import or include the element of willfulness. Not so. In *Roberson* we quoted approvingly the following statement found in *Anderson v. How*, 116 N. Y. 336, 22 N. E. 695:

". . . Willfullness is implied in maliciousness, but maliciousness is not implied in willfulness. . . ." (p. 215.)

The trial court here in its instructions gave the following definitions:

"a. 'Maliciously' means *willfully* doing a wrongful act without just cause or excuse.

"b. 'Willfully' means conduct that is purposeful and intentional and not accidental." (Emphasis supplied.)

The first definition accords with long-standing law (*State v. Boies*, 68 Kan. 167, 74 Pac. 630) and the latter is drawn from K. S. A. 1972 Supp. 21-3201 (2). The trial court specifically instructed the jury an element of the offense is that the killing be done maliciously. Instructions are to be construed together and in their entirety. The term "maliciously", as it relates to the crime of murder, imports and includes the term "willfully" and we so hold. The trial court properly instructed the jury respecting the elements of felony murder.

Appellant contends the court's instructions did not sufficiently define the term "reasonable doubt" as used therein. That given was as follows:

"A reasonable doubt is not an imaginary or speculative doubt but it is such a doubt as the jury is able to give a reason for."

In *State v. Mae McLaughlin*, 207 Kan. 584, 485 P. 2d 1352, we approved an instruction of like import, as this one must be. Moreover, we have since held it is not even necessary to define the

phrase "reasonable doubt" (*State v. Larkin,* 209 Kan. 660, 498 P. 2d 37; see also PIK 52.04, Criminal, p. 49).

Appellant asserts the trial court erred in permitting the state upon its cross-examination of appellant to inquire about a pretrial statement made by him and in allowing evidence of that statement to be received absent an out-of-court hearing determining its voluntary nature. The background of the matter is that the state had obtained a pretrial written statement from appellant admitting complicity in the robbery; however, since appellant was tried in the same trial with the codefendant Reed the prosecution did not offer the statement as a part of its case in chief. On the witness stand appellant testified he remembered nothing of the events of the period in question. Upon cross-examination he was shown the written statement and quizzed about its making. The document was admittedly signed by appellant and his mother. Various statements of an incriminating nature, inconsistent with his testimony on direct examination, were read by the cross-examiner, then appellant was asked whether he remembered making them. After much hedging appellant responded that if he made the statements he must have been out of his head but he didn't remember saying anything like them. By way of rebuttal the prosecution produced the detective to whom the statements were made. This witness testified concerning their making and the signing of the written instrument by appellant in the presence of his mother. The trial court admitted the document for the limited purpose of impeachment. The document was never shown to the jury nor were its full contents made known to the jury.

Appellant was given a *Miranda* warning immediately upon his arrest but a determination of the voluntariness of the confession was never made. Our rule has been that this finding must be made in a hearing out of the presence of the jury, even though no request for such hearing is made (*Baker v. State,* 204 Kan. 607, 464 P. 2d 212). Hence the confession was not properly qualified for admission as a part of the state's case in chief. Here it was not so admitted but was used only for impeachment. Courts which have considered the issue are divided as to whether an accused who takes the witness stand in his own behalf may be impeached through use of a confession which is inadmissible in the prosecution's case in chief, either because it was not voluntarily made or because it

was not otherwise properly qualified for admission as substantive evidence of guilt (see anno., 89 ALR 2d 478, Impeachment—Inadmissible Confession). More recently the federal constitutional questions involved in the problem were dealt with in *Harris v. New York,* 401 U. S. 222, 28 L. ed. 2d 1, 91 S. Ct. 643. There an accused had been questioned by police when taken into custody but had been given no advice of his right to counsel. After he testified at trial, prior inconsistent statements which he had made to the police were admitted for the purpose of impeaching his credibility. After noting there was no contention the statements were coerced or involuntarily made, the federal supreme court held that, even though the statements were inadmissible to establish the prosecution's case in chief under the *Miranda* rule, they could properly be used to impeach the accused's credibility, since the shield provided by *Miranda* could not be perverted into a license to use perjury by way of a defense, free from risk of confrontation with prior inconsistent utterances.

The situation here is analogous. The complaint is simply lack of out-of-court hearing—not that the statements were in fact coerced or involuntarily made (there is not the slighest hint such was the case). The statements were inadmissible as direct prosecution evidence of guilt. They were used and admitted only as inconsistent prior statements for impeachment purposes after appellant chose to testify. We believe the rule stated in *Harris* is appropriate and should be applied. Accordingly, we hold that an accused who offers himself as a witness in his own behalf may be impeached by proof of inconsistent statements contained in a confession not properly qualified for admission on the prosecution's case in chief for want of a hearing determining that it was voluntarily made.

Finally, appellant has alleged in his statement of points that for various reasons the trial court erred in overruling his motions for discharge, mistrial, directed verdict and new trial. His brief contains nothing in support of these assertions not already disposed of and beyond that extent they must be deemed abandoned. We have nonetheless examined all the grounds for those motions as revealed by the record on appeal and we find nothing to warrant disturbing the conviction. Evidence of appellant's guilt was overwhelming. He was positively identified by three eyewitnesses as a

participant in the fatal holdup and by chance was apprehended virtually on the scene. Nothing irregular occurred in his trial which prejudiced his substantial rights.

The judgment is affirmed.

APPROVED BY THE COURT.