No. 47,038

STATE OF KANSAS, *Appellee*, v. RICHARD DELWAYNE CLARK,
*Appellant.*

(521 P. 2d 298)

Opinion filed April 6, 1974.

*John F. Jorgensen,* of Dresie & Jorgensen, of Wichita, argued the cause
and was on the brief for the appellant.

*Larry Kirby,* deputy district attorney, argued the cause, and *Vern Miller,* attorney general, *Keith Sanborn,* district attorney, and *Stephen M. Joseph,* of counsel, of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, Richard Delwayne Clark, was charged with murder in the first degree, in violation of K. S. A. 21-401. He was convicted of murder in the second degree, as defined in K. S. A. 21-402. He has appealed, alleging various errors.

The facts of this case reflect a sordid tale of an illicit relationship which exploded into the violence of a savage beating given Mrs. Elizabeth J. Cato by her paramour, resulting in her death. An attempt will be made to sketch the salient facts as briefly as possible.

As recounted by the defendant, he began the morning of the fatal day, February 23, 1970, by buying a bottle of whiskey instead of going to work. He followed this with another purchase of booze which he shared with a friend. About noon he repaired to the Cato residence, where Elizabeth was living alone at the time, her husband then being in the hospital. At the Cato home, Clark became embroiled in a quarrel with Elizabeth over his drinking. Following this argument Mrs. Cato walked to a nearby store for some cigarettes where a second argument occurred. On her way back home Elizabeth was picked up by a Mr. Phillips who, some two hours later, let her out of his car near her home, under the watchful and vengeful eye of Mr. Clark. A third argument ensued in the Cato house which will be described in more detail later. At this point it will suffice to say the fight occurred early in the afternoon. After the violent affray, Clark apparently tried to wash the blood off of his girl friend and attempted to clean her up. He left her place around six o'clock on the pretext he was going to work and that he would return for a late supper. He did not go to work, however, but drove around, drinking and stopping a place or two, and about ten thirty or so he returned to the house to find Mrs. Cato stretched out on the couch, dead. She had died, so the autopsy revealed, from edema or internal bleeding as a result of her grievous injuries.

The defendant's first three points relate in one way or another to the sufficiency of the evidence. He contends the evidence was insufficient to establish malice or intent to kill and that his motion for a directed verdict of acquittal as to murder in either degree should have been sustained.

Clark points to the fact no weapon was found at the scene or introduced at the trial, and he argues that as a general rule an intent to kill cannot be inferred from an assault or beating with the hands and fists. Under ordinary circumstances this appears to be the rule. (See 22 A. L. R. 2d Anno: Killing Without Weapon—Intent—Malice, p. 854, *et seq.*) However, where conditions are beyond the ordinary or usual, the authorities recognize an exception, as noted in the A. L. R. annotation at pp. 856, 857:

"While it is generally held that hands and feet are not to be classed as deadly weapons per se, it is recognized that they may be a means likely to produce death, that one may commit murder by means of an attack with the fists or feet, and that they may become 'deadly weapons' when used in such manner and in such circumstances as are reasonably calculated to produce death."

We cannot agree that the record is barren of evidence from which malice or intent to kill may be inferred. For a number of reasons we view the evidence as sufficient to support the verdict. Dr. Eckert, a medical doctor specializing in forensic pathology, conducted the autopsy held in connection with the death. He testified as to the massive injuries inflicted on the deceased, the wounds, the fractures, the deep bleeding, the swelling of tissues and the final edema which terminated in her death. It was his opinion that the injuries were not administered at one time but could have extended over a period of from thirty minutes to three or four hours; that they could have been caused by a knee, a fist, an arm or forearm, a leg or a foot. There were abrasions, he testified, similar to those he had seen on people who had been stomped on.

It is no exaggeration to say there is evidence to indicate a brutal beating, brutal in the sense that it transcended the usual assault with fisticuffs and deteriorated into a slugging, kicking, or stomping episode of extended duration. A case with similar overtones is reported in 163 Kan. 225, 181 P. 2d 473, *State v. McCombs*. McCombs was prosecuted and convicted under the provisions of G. S. 1935, 21-435, the mayhem statute. He contended, on appeal, that the trial court erred in overruling his demurrer to the evidence. In rejecting that claim this court said:

". . . Appellant's vicious assault with his hands, fists and feet was terminated only after he had beaten, tackled and thrown Cloyd onto the cement sidewalk, kicked him and left him helpless and unconscious. The evidence was entirely sufficient to go to the jury on the charge of assault with intent to kill." (p. 229.)

The holding in *McCombs* accords with the general rule that evidence of a vicious assault with the fists is sufficient to support an inference of intent to kill. (*Carson v. Commonwealth*, 188 Va. 398, 49 S. E. 2d 704; *Commonwealth v. Dorazio, Appellant*, 365 Pa. 291, 74 A. 2d 125; *Pine v. People*, 168 Col. 290, 455 P. 2d 868.)

There is other evidence from which an intent to kill may reasonably have been deduced. In a telephone conversation between the defendant and Elizabeth's mother, Mrs. Ford, about 3:00 or 3:30 in the afternoon, the defendant said, according to Mrs. Ford, that "I beat the hell out of her" and that when Elizabeth asked Clark why he was telling that to her mother, the defendant told her "to shut up because when he got off the telephone he was going to finish her." Between 5:00 and 5:30 Mrs. Cato also made a phone call to Mr. Phillips, her companion of an earlier hour that afternoon, and said "Paul, come here, help", before Clark took over the telephone.

We conclude there was sufficient competent evidence to take the case to the jury on the charge of murder, and that the verdict of murder in the second degree is adequately supported.

More serious questions are raised in the area of instructions. In instruction 7, the trial court informed the jury that the information charged the defendant with murder in the first degree and that this charge included murder in the second degree, manslaughter in the first degree, manslaughter in the second degree and manslaughter in the fourth degree. The court then proceeded to instruct on first degree murder, second degree murder, first degree manslaughter under 21-407, and second degree manslaughter as defined in 21-412. No instruction whatever was given on fourth degree manslaughter.

The defendant requested instructions, in addition to those given, on (1) second degree manslaughter as defined in K. S. A. 21-411, (2) fourth degree manslaughter under K. S. A. 21-419, and simple assault and battery. The foregoing manslaughter statutes read as follows:

*K. S. A. 21-411.* "The killing of a human being without a design to effect death, in the heat of passion, but in a cruel and unusual manner, unless it be committed under such circumstances as to constitute excusable or justifiable homicide, shall be deemed manslaughter in the second degree."

*K. S. A. 21-419.* "The involuntary killing of another by a weapon, or by means neither cruel nor unusual, in the heat of passion, in any cases other than justifiable homicide, shall be deemed manslaughter in the fourth degree."

It is the duty of a trial court to instruct the jury not only as to the crime charged specifically in the information but also with

respect to such lesser offenses included therein as may be justified by the evidence. The rule is firmly imbedded in our jurisprudence. In *State v. Cunningham*, 120 Kan. 430, 243 Pac. 1006, it is framed in these words:

"It is made the duty of the court in charging the jury, to state to them all matters of law which are necessary for their information in giving their verdict. (R. S. 62-1447.) The rule in homicide cases has been repeatedly declared that the court should instruct the jury not only on the evidence adduced by the prosecution in support of the higher offense, but also upon the whole evidence and especially upon the lower degrees of the offense, if there is substantial evidence applicable to the lower degrees. The instructions should cover every issue or theory in the case which has support in the evidence. Whether the evidence tended to support the lower degrees of the offense appears to the court to be weak and unsatisfactory, the accused is nevertheless entitled upon request to have the issue and the effect of the evidence submitted to the jury. . . ." (p. 431.)

*State v. Palmer*, 173 Kan. 560, 251 P. 2d 225, is quite in point. Palmer was charged with first degree murder and was convicted of murder in the second degree, as in the case before us. The homicide occurred during a shooting match arising over remarks about a lady present at an establishment where players were wont to throw the galloping dice. On appeal, the defendant contended the trial court should have instructed on 21-411 as well as on other manslaughter statutes. This court agreed that the trial court should have instructed the jury on all appropriate degrees of manslaughter where the evidence would so justify, since the accused was entitled to have his theory of the case submitted to the jury. See, also, *State v. Patterson*, 52 Kan. 335, 355, 34 Pac. 784; *State v. Curtis*, 93 Kan. 743, 145 Pac. 858; *State v. Booker*, 200 Kan. 166, 171, 434 P. 2d 801; *State v. Roberson*, 210 Kan. 209, 211, 499 P. 2d 1137.

The right of an accused to have his theory of defense submitted to the jury under proper instructions has been considered so basic as to require the trial court to instruct on lesser offenses included in the principle charge, where there is support in the evidence, without any request therefor being made. This principal, now codified in K. S. A. 1973 Supp. 21-3107 (3), is exemplified in *State v. Fouts*, 169 Kan. 686, 221 P. 2d 841:

"In prosecutions for homicide it is the duty of the trial court to instruct the jury, not only as to the offense charged but as to all lesser offenses of which the accused might be found guilty under the information and upon the evidence adduced, even though such instructions have not been requested or have been objected to." (Syl. ¶ 3.)

Among other cases to this effect are *State v. Smith*, 161 Kan. 230, 236, 167 P. 2d 594; *State v. Severns*, 158 Kan. 453, 458, 148 P. 2d 488; *State v. Williams*, 182 Kan. 468, 473, 322 P. 2d 726.

The *Williams* case bears points of similarity to the case at hand. Williams was tried for murder and convicted of second degree manslaughter under 21-411. The homicide occurred when Williams beat and kicked a handcuffed jail-mate to his death. He contended the evidence did not justify the court in submitting instructions on 21-411, claiming that the manner in which the injuries were inflicted was not cruel and unusual. This court disagreed, observing that "we cannot say that the treatment given deceased by the defendant was not cruel and unusual."

In our opinion there was sufficient evidence before the court to require instructions on second degree manslaughter under K. S. A. 21-411 and on fourth degree manslaughter as defined in K. S. A. 21-419, the so-called "heat of passion" statutes. The defendant's testimony was to this effect: The fatal fracas began when he told Elizabeth he wanted out of their intimate relationship—that he was going to leave town; Elizabeth voiced objection and angry, heated arguments ensued; when she started toward the kitchen, where he thought she had a gun, he followed her; she grabbed a butcher knife and lunged at him; his hand was slightly cut; they began to struggle with each other and wrestled over possession of the knife; Elizabeth kept repeating she was going to kill him; both parties were very angry; that once he was kicked in the face when he was down; that he lost all control of himself—lost his cool; he didn't know how many times he struck Mrs. Cato. The condition of the house could be said to reflect a moving, violent struggle, and there was disinterested testimony that Clark had lacerations across the knuckles of one hand.

In *State v. Jones*, 185 Kan. 235, 341 P. 2d 1042, we construed heat of passion as meaning any intense or emotional excitement prompting violent and agressive action such as rage, anger, hatred, furious resentment or fear to such an extent that a normal person would be caused to act on impulse without reflection. The defendant's own testimony would appear to be of such pattern.

The evidence pointing to a lesser offense of which an accused might rationally be found guilty in a given case need not be strong or extensive to require instructions to the jury with regard thereto. (*State v. Roberson*, supra.) Nor need the trial court be satisfied

as to its weight or conclusive character. Long ago this aspect of the rule was given expression in *State v. Buffington*, 66 Kan. 706, 72 Pac. 213:

"The defendant in a criminal prosecution has a right to have the court instruct the jury in the law applicable to his contention, if it be supported by substantial evidence, however weak, unsatisfactory or inconclusive it may appear to the court. To refuse so to instruct the jury would be to invade its province in the trial of a case. The question is not whether, in the mind of the court, the evidence as a whole excludes the idea that the defendant is guilty of an inferior degree of the offense charged, but whether there is any substantial evidence tending to prove an inferior degree of the offense. If there is, then the question of such degree should be submitted to the jury. The unsupported testimony of the defendant alone, if tending to establish such inferior degree, is sufficient to require the court so to instruct." (pp. 709, 710.)

We cannot put it any plainer.

We believe the trial court committed error in still another respect with regard to instructions. In its case in chief the state presented evidence concerning an episode which took place some years before, where the defendant had stabbled his wife. That incident had resulted in Clark's conviction and he apparently was still on parole.

On several occasions we have discussed the provisions of K. S. A. 60-455. So far as pertinent here the statute provides in substance that evidence that a person committed a crime on a specified occasion is not admissible to prove his disposition to commit a crime as a basis for inferring that he committed another crime on another occasion, but that such evidence is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or knowledge. However, the trial court deviated from the language of the statute and instructed that the evidence was to be considered only as circumstances bearing on the question of "the defendant's motive, *inclination or tendencies, disposition* or absence of mistake or accident." (Emphasis supplied.)

In the very recent case of *State v. Clingerman*, 213 Kan. 525, 516 P. 2d 1022, we had occasion to examine an instruction very much like the one given here. In the opinion it was said:

"Evidence of prior crimes cannot be used under K. S. A. 60-455 to establish 'inclination', 'attitude', or 'tendencies'. The statute does not include these within the eight possible factors of proof. K. S. A. 60-455 expressly excludes evidence of prior crime if its only purpose is to show a disposition to commit crime, *i. e.*, inclination, attitude, or tendency." (p. 527.)

The ink used in that opinion is hardly dry. We are satisfied with our decision in the *Clingerman* case and deem it controlling of the point raised here. Moreover, we cannot say that the error in the instruction could not have resulted in prejudice to the defendant under the circumstances appearing here.

Other points raised by the defendant are somewhat minor in character and we deem it unnecessary to discuss them in view of our disposition of this appeal.

The judgment is reversed with directions to grant the defendant a new trial.