No. 48,555

STATE OF KANSAS, *Appellee*, v. CLIFTON LORRIN STAFFORD, *Appellant.*

(573 P.2d 970)

Opinion filed November 5, 1977.

*Michael D. Gragert,* of Hiebsch, Robbins & Tinker, of Wichita, argued the cause, and was on the brief for the appellant.

*Stuart W. Gribble,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Vern Miller,* district attorney, and *Sharon Werner,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is a direct appeal from a jury verdict of guilty of the offense of second degree murder (K.S.A. 21-3402). Defendant had been living with the victim, Shirley Sanders, for about three years.

The facts which led to Shirley Sanders' death are not in serious dispute. On the afternoon of December 28, 1974, defendant arrived home from work, planning to meet Shirley later at a friend's house. Before leaving home, defendant had two mixed drinks and got his handgun, ostensibly for the purpose of taking it to the friend for later use to herald in the new year. Defendant then drove to meet Shirley and his friend, Charlie Phillips.

While at Phillips' house defendant had another drink, several beers and straight gin, all on an empty stomach. About midnight defendant and Shirley went to the 904 Club, a Wichita nightspot owned by Phillips. Because of defendant's condition he did not remember how he got to the club.

Shortly after defendant arrived at the club, he got into a scuffle. Phillips broke it up and threatened to call the police if there was further trouble, then turned and walked away from defendant. About that time Shirley spotted a girl friend and stated she was going to get the friend to take her to her father's house. Defendant intervened and told Shirley she wasn't going anyplace, that she came to the club with him and would leave with him. Defendant and Shirley left the girl friend and walked to the bar. A few seconds later Phillips and Shirley's girl friend heard Shirley say to defendant, "[Y]ou always talk about shooting me, so shoot me God damn it, shoot me. . . . I know you got your gun, but I am not afraid of you." Phillips went to defendant and asked if he had a gun; whereupon defendant pulled out a pistol and fired four shots, three striking Shirley and killing her.

After the shooting, defendant left the club and went to the residence of a friend, Cullen Becknell. When defendant went into the house he stated to Cullen, "Call me a lawyer I think I shot Shirley, but I don't think I killed her." Cullen's wife, Clara, testified that defendant said he shot Shirley because she just pushed him a little too far.

When police arrived defendant was sitting at a table with a pistol near his right hand. Defendant was advised of his rights and was arrested. Thereafter, defendant told officers his gun had been used to shoot Shirley Sanders.

The testimony comprising the state's case came from twelve witnesses. Defendant was the only person to testify on his behalf. Thirty pages of defendant's testimony were transcribed, but another fifty pages were lost. On order of the district court an attempt was made to reconstruct the missing transcript through testimony of defendant's trial attorney. The lost transcript formulates defendant's first point on appeal.

Defendant argues the incomplete transcript makes meaningful appellate review impossible and deprives him of a substantive right. He asks that the judgment and verdict be set aside and a new trial ordered. To buttress his argument defendant cites

*Griffin v. Illinois,* 351 U.S. 12, 100 L.Ed. 891, 76 S.Ct. 585, wherein the United States Supreme Court held that the equal protection clause of the United States Constitution requires a transcript be provided an indigent defendant where it would be provided to a defendant who had the ability to pay for it.

The same rule does not apply when all or a portion of the transcript is unavailable because stenographic notes are lost or otherwise missing. (*State v. Jefferson,* 204 Kan. 50, 460 P.2d 610.) In such instances provision is made for reconstructed records for appellate review. (See Rule No. 6[*m*], Rules of the Supreme Court of Kansas, 214 Kan. xxv [now Rule No. 3.04], 220 Kan. xiv [Adv. Sheet No. 2].) Such records have long been recognized and approved. (*State v. Lewis,* 220 Kan. 791, 556 P.2d 888; *State v. Jefferson,* supra at 52; *State v. Allen,* 111 Kan. 3, 206 Pac. 340.)

The inability of the state to provide a full transcript of the trial proceedings does not entitle a defendant to a new trial per se. Before defendant can claim he is entitled to a new trial he must demonstrate that despite a good faith effort it is impossible to reconstruct the missing portion of the record and this precludes effective appellate review of the issues. (*State v. Jefferson,* supra.)

In the instant case defendant's trial counsel was called to testify as to his recollection of defendant's testimony. Although he had no notes of the trial, he did have notes of a conference between himself and defendant. Based upon his independent recollection he further remembered there was no extensive cross-examination of defendant and no "serious dispute on anything." Counsel indicated that defendant basically testified he was too intoxicated to remember the shooting and therefore showed a lack of malice. There appears to be no serious difference between the reconstructed testimony and that preserved by transcript; therefore, we find no prejudice to defendant which requires reversal.

The rest of defendant's claims of error relate to instructions given by the trial court. The trial court instructed on first and second degree murder and voluntary and involuntary manslaughter, using PIK (Criminal) instructions. The court defined "maliciously," "deliberately," "wilfully," and "intentionally," using PIK (Criminal) 56.04 (*a*)-(*d*). The court did not define "heat of passion" as set out in PIK (Criminal) 56.04 (*e*). There was an instruction on the effect of voluntary intoxication. The jury was instructed on defendant's presumption of innocence, weight of

the testimony of the witnesses, and the duty to reach a verdict in light of all the evidence.

It is to be noted that none of the objections to instructions now raised were presented to the trial court; therefore, our scope of review is limited to a determination of whether the instructions are "clearly erroneous." (K.S.A. 22-3414[3]; *State v. Birch*, 221 Kan. 122, 558 P.2d 119; *State v. Nesmith*, 220 Kan. 146, 551 P.2d 896; *State v. Suing*, 210 Kan. 363, 502 P.2d 718.) An instruction is clearly erroneous when the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility the jury would have returned a different verdict.

Defendant first complains because the jury was instructed that "[m]aliciousness may be inferred from the fact the homicide was committed with a deadly weapon." We find no fault with that instruction, as that precept has long been the accepted law in this state. (*State v. Wright*, 219 Kan. 808, 549 P.2d 958; *State v. Hamilton*, 216 Kan. 559, 534 P.2d 226; *State v. Blake*, 209 Kan. 196, 495 P.2d 905; *State v. Greenwood*, 197 Kan. 676, 421 P.2d 24; *State v. Donahue*, 197 Kan. 317, 416 P.2d 287; *State v. Dull*, 67 Kan. 793, 74 Pac. 235.)

The further argument is made that reference to "deadly weapon" is prejudicial because it singles out a particular piece of information and causes the jury to focus upon it. An instruction to the jury that malice may be inferred from the use of a deadly weapon does not draw undue attention to that particular item of evidence when the jury has been instructed to determine its verdict from all the evidence.

Defendant also argues the jury was improperly instructed as to the meaning of the words "wilfully" and "intentionally." The instruction was verbatim from PIK (Criminal) 56.04 (*c*) and (*d*) and conforms to the definitions of those terms as set out in K.S.A. 21-3201. The court's instruction was proper. (See, *State v. Birch*, supra; *State v. Lassley*, 218 Kan. 752, 545 P.2d 379; *State v. Osbey*, 213 Kan. 564, 517 P.2d 141; *State v. Osburn*, 211 Kan. 248, 505 P.2d 742.)

Finally, defendant argues the trial court committed error by failing to define "heat of passion." While the term has often been defined and explained in previous opinions of this court (*State v. Clark*, 214 Kan. 293, 521 P.2d 298; *State v. Stafford*, 213 Kan. 152, 515 P.2d 769; *State v. Roy*, 203 Kan. 606, 455 P.2d 512; *State v.*

*McDermott,* 202 Kan. 399, 449 P.2d 545, cert. denied, 396 U.S. 912, 24 L.Ed.2d 187, 90 S.Ct. 226; *State v. Johnson,* 201 Kan. 126, 439 P.2d 86), it is not a term which is so foreign to the vocabulary of the average juror as to require definition.

The term "heat of passion" accompanied the preceding words "upon a sudden quarrel" in the instruction on voluntary manslaughter. From a reading of the instruction as a whole there was little likelihood the jury was confused or forced to speculate as to the meaning of "heat of passion." (*State v. Sparks,* 217 Kan. 204, 535 P.2d 901.)

We find no reversible error and the judgment is affirmed.