NOT DESIGNATED FOR PUBLICATION

No. 126,883

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JIMMY R. HOLLIMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Coffey District Court; TAYLOR J. WINE, judge. Submitted without oral argument. Opinion filed April 10, 2026. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before BOLTON FLEMING, P.J., ISHERWOOD and COBLE, JJ.

PER CURIAM: A jury convicted Jimmy R. Holliman of aggravated battery against a law enforcement officer, fleeing or attempting to elude a law enforcement officer, burglary of a motor vehicle, theft, three counts of criminal damage to property, and one count of driving while suspended. These convictions stemmed from an incident where Holliman stole a vehicle. During a pursuit by law enforcement, Holliman stopped the vehicle, placed it in reverse, and violently struck a vehicle driven by a law enforcement officer. That officer suffered injuries to his knee and shoulder. At sentencing, the district

court ordered a 108-month prison sentence and restitution in the amount of $3,776, to be paid at the rate of $25 per month.

On appeal, Holliman first challenges the sufficiency of the evidence supporting his conviction for aggravated battery against a law enforcement officer, arguing that the injuries to the officer did not rise to the level of "bodily injury" as defined in *Paida v. Leach*, 260 Kan. 292, 917 P.2d 1342 (1996). But we find that the definition Holliman seeks to have applied is not appropriate in this context under Kansas law. Instead, we find that there was sufficient evidence that the officer suffered "bodily harm" under K.S.A. 21-5413(d)(3)(A) and *State v. Robinson*, 306 Kan. 1012, 1027, 399 P.3d 194 (2017).

Holliman also argues that the district court erred in its jury instruction for aggravated battery against a law enforcement officer, because the court failed to define "bodily harm" under *Paida,* and because the district court did not give a specific lesser included crime instruction. But those arguments fail because *Paida* is not applicable in the "bodily harm" analysis and additionally, the term required no definition. Moreover, it would not have been factually appropriate to instruct the jury on the lesser included crime Holliman cites in his appeal.

Holliman's third argument is that the prosecutor erred in his comments related to "bodily injury" during closing argument. We find the prosecutor's statements were not made in error because they were fair comments on the evidence presented at trial.

Finally, Holliman argues that the district court abused its discretion in ordering restitution. The district court considered Holliman's financial status, work history and incarceration before ordering a small portion of the requested restitution. The district court did not abuse its discretion. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Jimmy R. Holliman was convicted by a jury of aggravated battery against a law enforcement officer, fleeing or attempting to elude a law enforcement officer, burglary of a motor vehicle, theft, three counts of criminal damage to property, and one count of driving while suspended. These convictions stemmed from a series of events that occurred on September 10, 2020.

The day began when Jaymie Willams took his 2003 white Chevy Tahoe to Bahr Tire to have a tire repaired. Williams left his keys in the Tahoe while he went inside the shop. As Williams was going inside, Chris Bahr, the owner of Bahr Tire, arrived and parked his vehicle next to the Tahoe. Less than one minute later, Bahr observed a man get into the Tahoe and speed off. Bahr later identified the man who took the Tahoe as the defendant, Jimmy R. Holliman.

A Bahr Tire employee called 911. A second Bahr Tire employee, Chris Christy, also observed the incident. Christy left in his own vehicle to follow the Tahoe. After being passed by two law enforcement vehicles, he stopped his pursuit. A few minutes later, as Christy was returning to the shop, he observed a damaged law enforcement SUV. He checked on the occupant, who was identified as Coffey County Lieutenant Detective Garen Honn. Honn was complaining that his knee hurt.

Honn's role in the incident began when he started pursuing the Tahoe. Honn had been advised by dispatch that Chris Christy was also in pursuit. As Honn caught up with Christy's vehicle, Christy pulled over, and Honn continued pursuing the Tahoe. Honn was able to locate the Tahoe, and as he approached, Burlington Police Sergeant Randy Stuart arrived in a vehicle behind him. The Tahoe finally came to a stop at an intersection. Rather than pulling over to the shoulder of the road, Honn described that the Tahoe slowed, and then abruptly stopped in the roadway.

Honn was able to stop two to three car lengths behind the Tahoe. Stuart exited his vehicle and started to approach the Tahoe from the passenger side of Honn's vehicle. Honn radioed dispatch and was beginning to give the Tahoe's license plate number when the Tahoe's white backup lights activated. According to Honn, the rear tires of the Tahoe started spinning and the rear of the vehicle came off the ground. Honn described that the Tahoe came at him "very violently" and struck his vehicle. Stuart described that the Tahoe hit Honn's vehicle "so hard I saw what would be the passenger side rear tire of the white Tahoe came off the ground approximately ten inches and I thought that vehicle was coming back and onto the hood of Detective Honn's vehicle." Upon impact, Honn's airbags deployed.

Honn testified at trial that he "immediately felt pain in my left knee and in my neck." He contacted dispatch and requested an ambulance. Members of the local fire department and emergency medical services (EMS) responded to the scene. Honn was examined by EMS but declined going to the hospital by ambulance. The paramedic, Kimberly Dyster, noted bruising just above Honn's knee. Honn was examined later that day by Dr. John Shell. Dr. Shell's diagnosis and treatment plan from the examination included "mild right shoulder contusion, left knee contusion, supportive care Tylenol Advil, follow-up as needed." Honn testified at trial that he suffered a bruised and swollen knee, and a superficial burn on his shoulder from either the seat belt or air bag.

After striking Honn's vehicle, the Tahoe fled. Stuart pursued the Tahoe and observed it leave the roadway and hit a berm that separated a ditch from a soybean field. The Tahoe went airborne and then landed. The Tahoe continued through the soybean field.

Stuart was unable to follow as his vehicle could not handle the terrain. Stuart watched as the driver abandoned the Tahoe and entered a wooded area. Coffey County Sheriff's Deputy Daniel Frazier arrived, Stuart entered Frazier's vehicle, and both men

4

followed the tracks left by the Tahoe. Stuart and Frazier approached the Tahoe to make sure no one else was inside and secured the vehicle. Additional law enforcement officers arrived on scene, entered the woods, and apprehended the driver who was later identified as Holliman.

At the conclusion of these events, the Tahoe was recovered by its owner, Williams, with significant damage. William's insurance company totaled the Tahoe and Williams later sold it for $3,900. Additionally, the law enforcement vehicle Honn was driving was also significantly damaged, and the insurance company for Coffey County paid $30,924.12 for that claim. Chris Bahr testified that when the Tahoe sped out quickly from his parking lot, it kicked gravel onto his truck, causing approximately $4,000 in damage. The soybean field damaged by the Tahoe was owned by Troy Birk. At trial, Birk testified that the Tahoe had driven through two acres of planted soybeans resulting in a complete loss. Birk expected to earn $11 per bushel at 58 bushels per acre for a total of $1,176 in damages.

Holliman also testified at trial. He denied stealing the Tahoe as well as striking Honn's vehicle.

Following his conviction at trial, Holliman was sentenced to 108 months in prison. The court ordered $3,776 in restitution to be paid at $25 per month. Holliman timely appeals.

ANALYSIS

WAS THERE SUFFICIENT EVIDENCE TO SUSTAIN HOLLIMAN'S CONVICTION FOR AGGRAVATED BATTERY AGAINST A LAW ENFORCEMENT OFFICER?

Holliman's first argument on appeal is that there was insufficient evidence to support his conviction for aggravated battery against a law enforcement officer.

5

*Standard of Review*

"When a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses." *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024).

A guilty verdict will be reversed "only in rare cases when the court determines that evidence was so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt." *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018).

*Discussion*

Holliman was found guilty of aggravated battery against a law enforcement officer, pursuant to K.S.A. 21-5413(d)(3)(A):

"(d) Aggravated battery against a law enforcement officer is:
. . . .
"(3) knowingly causing, with a motor vehicle, bodily harm to a:
    (A) Uniformed or properly identified state, county or city law enforcement officer while the officer is engaged in the performance of the officer's duty. . . ." K.S.A. 21-5413(d)(3)(A).

Holliman alleges that there was insufficient evidence that the officer, Detective Honn, suffered "bodily harm," which is an element of the crime under K.S.A. 21-5413(d)(3)(A). Holliman relies on *Paida v. Leach*, 260 Kan. 292, for support of his argument.

In *Paida*, the Kansas Supreme Court considered the definition of "bodily injury" under the Protection from Abuse Act, K.S.A. 60-3102(a). The facts in *Paida* involved injury inflicted by a father on his minor daughter. The father was alleged to have shoved

6

soap in the daughter's mouth. The daughter had braces, and the evidence was that there was some minor bleeding.

In evaluating whether the daughter had suffered abuse under the Protection from Abuse Act, the court concluded, "[t]here is no evidence of pain, certainly not substantial pain, nor is there any evidence of impairment of Jennifer's physical condition. Thus, no bodily injury within the meaning of the Act, as we interpret it, was shown." 260 Kan. at 301. The court concluded that bodily injury as used in the Protection from Abuse Act requires "substantial physical pain or an impairment of physical condition." 260 Kan. at 301. Holliman argues that if we adopt the definition of "bodily injury" from *Paida,* the evidence is that Honn did not suffer "substantial physical pain or an impairment of physical condition." 260 Kan. at 301. Thus, there would be insufficient evidence that Holliman committed aggravated battery against a law enforcement officer.

Holliman's argument that we should adopt the definition of "bodily injury" from *Paida* in the present case ignores several important facts. First, *Paida* was decided under the Protection from Abuse Act—a completely different context than that of a criminal case. Second, "bodily harm" is the required element under K.S.A. 21-5413(d)(3)(A)—not "bodily injury" as discussed in *Paida.* And most importantly, Holliman's argument conflicts with Kansas case law.

In *Robinson*, an argument between the defendant and his girlfriend resulted in violence. Charges were filed, and a jury convicted Robinson of aggravated burglary, aggravated battery, and criminal damage to property. On appeal, Robinson challenged a jury instruction that defined "bodily harm" as it pertained to his aggravated battery charge. The court affirmed the trial court's jury instruction. The court noted, "We have defined 'bodily harm' as 'any touching of the victim against [the victim's] will, with physical force, in an intentional hostile and aggravated manner.' *State v. Dubish*, 234

7

Kan. 708, 715, 675 P.2d 877 (1984); *State v. Livingston*, 272 Kan. 853, 859, 35 P.3d 918 (2001)." 306 Kan. at 1027.

*Robinson* is instructive because the Kansas Supreme Court specifically defined the term "bodily harm" in the context of a prior version of the aggravated battery statute—K.S.A. 21-3414—which was repealed in 2011 with the recodification of the Kansas Criminal Code. The crime of aggravated battery is now found generally at K.S.A. 21-5413(b), and aggravated battery against a law enforcement officer as charged in this case is specifically found at K.S.A. 21-5413(d)(3)(A). While the crime of aggravated battery against a law enforcement officer is now based on a different statute, the definition from *Robinson* is still relevant, as the new statute continues to use the term "bodily harm."

Recently, the Kansas Supreme Court considered the definition of the term "bodily harm" in the context of the aggravated kidnapping statute, K.S.A. 21-5408(a)(3) and (b). See *State v. Moore*, 319 Kan. 557, 556 P.3d 466 (2024). K.S.A. 21-5408(a)(3) and (b) provide that aggravated kidnapping is "the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person . . . to inflict bodily injury or to terrorize the victim . . . when bodily harm is inflicted upon the person kidnapped." *Moore*, 319 Kan. at 562. Moore argued his victim only sustained "minor abrasions," and not bodily harm. 319 Kan. at 562.

The *Moore* court stated that analysis of a statute "'must start with the language of the statute itself.'" 319 Kan. at 563. The Kansas Supreme Court continued,

> "We begin by considering what the statute means by 'bodily harm.' The Kansas Criminal Code does not explicitly define the term, but its meaning is not so difficult to understand. Black's Law Dictionary defines bodily harm as '[p]hysical pain, illness, or impairment of the body.' Black's Law Dictionary 861 (11th ed. 2019). And Merriam-Webster defines it as 'any damage to a person's physical condition including pain or

illness.' Merriam-Webster Online Dictionary (defining bodily harm as bodily injury). [Citation omitted.]" 319 Kan. at 563.

The Kansas Supreme Court held that "[w]e view the evidence in the light most favorable to the prosecution and hold a reasonable jury could find he caused [the victim] bodily harm. There is no factual dispute she had physical injuries—she suffered abrasions and felt pain" during the altercation. 319 Kan. at 564.

Turning to the facts of this case, Honn testified he immediately felt pain in his left knee and neck after the impact of the accident. He called for assistance, stating that his vehicle had been violently struck and that he was injured. Honn testified his knee was swollen and bruised, and he had a superficial burn on his shoulder.

Officer Stuart described the impact of the Tahoe striking Honn's vehicle as "extremely violent." Paramedic Kimberly Dyster testified that she observed bruising just above Honn's knee and tenderness on palpation. And Dr. John Shell testified that Honn presented with knee and shoulder pain following the accident. Dr. Shell diagnosed Honn with a mild right shoulder contusion and left knee contusion.

We decline to apply the definition of "bodily injury" proposed by Holliman from *Paida*. That definition comes to us from an entirely different body of law and is not the same term at issue here. Instead, we find that the Kansas Supreme Court has defined the term "bodily harm" as it pertains to the general crime of aggravated battery. As noted above, under that definition, bodily harm is "any touching of the victim against [the victim's] will, with physical force, in an intentional hostile and aggravated manner." *State v. Robinson*, 306 Kan. at 1027. Similarly, the court in *Moore* emphasized that the presence of physical injury and pain would satisfy the element of "bodily harm." 319 Kan. at 564. When viewed in a light most favorable to the State, the evidence here clearly

9

supports a finding that Honn suffered bodily harm. Sufficient evidence supports Holliman's conviction for aggravated battery on a law enforcement officer.

### DID THE DISTRICT COURT ERR IN ITS JURY INSTRUCTION FOR THE CRIME OF AGGRAVATED BATTERY AGAINST A LAW ENFORCEMENT OFFICER?

Holliman's second issue on appeal is that the district court erred in its jury instructions related to the crime of aggravated battery against a law enforcement officer. Holliman raises two distinct arguments. First, he alleges that the term "bodily harm" under K.S.A. 21-5413(d)(3)(A) should have been defined for the jury as required under *Paida v. Leach*, 260 Kan. 292. Second, Holliman argues that the district court erred by failing to instruct the jury on a lesser included offense of misdemeanor battery against a law enforcement officer under K.S.A. 21-5413(c)(1)(B).

*Standard of Review*

"When analyzing jury instruction issues, appellate courts follow a three-step process: (a) determine whether we can or should review the issue, i.e., whether we have appellate jurisdiction and the parties have preserved the issue for appeal; (b) consider the merits of the claim to determine whether error occurred below, i.e., whether the instruction was legally and factually appropriate; and (c) assess whether the error requires reversal, i.e., whether the error can be considered harmless. Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step." *State* v. *Ford*, 320 Kan. 507, 516-17, 571 P.3d 500 (2025).

*The district court did not err by failing to define "bodily harm."*

Holliman alleges that "[t]he jury should have been instructed that bodily harm requires substantial physical pain or impairment of physical condition." Holliman's argument is without merit for two reasons. First, the definition proposed by Holliman is

10

legally incorrect in the context of the crime of aggravated battery on a law enforcement officer. Second, the term bodily harm is widely used and requires no definition.

As we have explained, Holliman's proposed definition based on *Paida* is not applicable here. Again, in *Robinson,* the Kansas Supreme Court defined "bodily harm" as it pertains to the general crime of aggravated battery as "any touching of the victim against [the victim's] will, with physical force, in an intentional hostile and aggravated manner." 306 Kan. at 1027. This definition does not require "substantial physical pain or impairment of physical condition" as proposed by Holliman.

Further, the Kansas Supreme Court has also held that "widely used and readily understood terms need not be defined in jury instructions." *State v. Ervin*, 320 Kan. 287, 298, 566 P.3d 481 (2025). Moreover, a trial court need not define every term in a jury instruction. "It is only when the instructions as a whole would mislead the jury, or cause them to speculate, that additional terms should be defined." *State v. Armstrong*, 299 Kan. 405, 440, 324 P.3d 1052 (2014). In *Moore,* the Kansas Supreme Court noted that the term "bodily harm" is easily understood, stating, "The Kansas Criminal Code does not explicitly define the term, but its meaning is not so difficult to understand." 319 Kan. at 563. The court went on to discuss general meanings of the term under common dictionary definitions. 319 Kan. at 563. We agree that the term "bodily harm" was not difficult to understand and no definition was required in the jury instructions.

"To determine whether a jury instruction is legally appropriate, we review whether the instructions fairly and accurately state the law as it applied to the facts of the case and whether the instructions could have reasonably misled the jury." *State v. Ford*, 320 Kan. at 519. We find here that the jury instructions accurately stated the elements of the crime of aggravated battery against a law enforcement officer. Thus, the district court did not err in failing to give Holliman's definition within a jury instruction.

*The district court did not err by failing to instruct on the lesser included crime of misdemeanor battery on a law enforcement officer under K.S.A. 21-5413(c)(1)(B).*

Holliman also alleges the district court erred by failing to instruct the jury on the lesser included offense of misdemeanor battery against a law enforcement officer under K.S.A. 21-5413(c)(1)(B). Holliman concedes he did not request this instruction at trial and did not object to the original instructions given.

Holliman was charged with aggravated battery against a law enforcement officer, under K.S.A. 21-5413(d)(3)(A). The complaint read:

"That on or about the 10th day of September, 2020, in Coffey County, Kansas, Jimmy R. Holliman, then and there being present did unlawfully, feloniously and knowingly, with a motor vehicle, cause bodily harm to Garen Honn, a uniformed or properly identified county law enforcement officer, while such officer was engaged in the performance of his duty. In violation of K.S.A. 21-5413(d)(3)(A), Aggravated Battery on a Law Enforcement Officer, a severity level 3 person felony."

The district court instructed the jury on the original offense of aggravated battery against a law enforcement officer, as well as one lesser included offense, in instruction No. 9:

"The defendant is charged in Count 1 with Aggravated Battery on Law Enforcement with Motor Vehicle. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:

"1. The defendant knowingly caused bodily harm to Garen Honn with a motor vehicle
"2. Garen Honn was a uniformed or properly identified county law enforcement officer.
"3. Garen Honn was engaged in the performance of his duty.

12

"4. This act occurred on or about the 10th day of September, 2020, in Coffey County Kansas.

"A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about or of the circumstances in which he was acting or that his conduct was reasonably certain to cause the result complained about by the State.

"If you do not agree that the defendant is guilty of Aggravated Battery on Law Enforcement with [a] Motor Vehicle, you should then consider the lesser included offense of Battery Against a Law Enforcement Officer. To establish this charge, each of the following claims must be proved:

"1. The defendant knowingly caused bodily harm to Garen Honn.
"2. Garen Honn was a uniformed or properly identified county law enforcement officer.
"3. Garen Honn was engaged in the performance of his duty.
"4. This act occurred on or about the 10th day of September, 2020, in Coffey County Kansas.
"A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about or of the circumstances in which he was acting or that his conduct was reasonably certain to cause the result complained about by the State."

The lesser included crime from instruction No. 9, battery against a law enforcement officer, is defined in K.S.A. 21-5413(c)(2)(B):

"(c) Battery against a law enforcement officer is:
. . .
"(2) battery as defined in subsection (a)(1) committed against a:
. . .
"(B) uniformed or properly identified state, county or city law enforcement officer, other than a state correctional officer or employee, a city or county correctional officer or employee or a juvenile detention facility officer, or employee, while such officer is engaged in the performance of such officer's duty. . . ." K.S.A. 21-5413(c)(2)(B).

13

The crime of battery against a law enforcement officer under K.S.A. 21-5413(c)(2)(B) first requires a finding that a battery was committed as defined in K.S.A. 21-5413(a)(1). That subsection defines battery as "knowingly or recklessly causing bodily harm to another person . . . ." K.S.A. 21-5413(a)(1). Holliman argues that the district court should have instructed the jury using an additional lesser included crime instruction based on K.S.A. 21-5413(c)(1)(B). Under that subsection, the crime of misdemeanor battery against a law enforcement officer first requires a battery as defined under K.S.A. 21-5413(a)(2). Battery under subsection (a)(2) is defined as "knowingly causing physical contact in a rude, insulting or angry manner." K.S.A. 21-5413(a)(2).

We first consider whether the lesser included instruction now proposed by Holliman would have been legally appropriate. "In general, a jury instruction on a lesser included offense is legally appropriate." *State v. Phillips*, 312 Kan. 643, 668, 479 P.3d 176 (2021). We note that the lesser included instruction given by the court included language describing battery as knowingly causing bodily harm to another person under K.S.A. 21-5413(a)1). The additional instruction Holliman believes should have been given includes language describing battery as "knowingly causing physical contact . . . in a rude, insulting or angry manner." K.S.A. 21-5413(a)(2). While these two subsections define battery differently, both are applicable here because the Kansas Supreme Court has resolved the conflict by holding that physical contact is normally a precursor to bodily harm. *State v. Phillips*, 312 Kan. at 672-73. In considering whether a lesser included crime instruction based on physical contact was legally appropriate where the complaint was based on bodily harm, the *Phillips* court concluded "'a complaint alleging "bodily harm" likely puts a defendant on notice that they could be found guilty by way of "physical contact" because the physical contact of aggravated battery is likely a necessary precursor of the bodily harm.'" *Phillips,* 312 Kan. at 671 (quoting *State v. O'Connor*, No. 118,519, 2019 WL 1868327 at *6 [Kan. App. 2019]).

14

In other words, a proposed lesser included crime instruction based on "physical contact" would not be overbroad, even when the original charge is based on "bodily harm," as it is here. 312 Kan. 672 ("Phillips' requested instruction was not impermissibly overbroad based on the charging document in his case.").

Under K.S.A. 21-5109(b)(1), a lesser included offense is "[a] lesser degree of the same crime." Because the misdemeanor offense instruction Holliman believes should have been given constitutes a lesser degree of aggravated battery, it is considered a lesser offense by statute. Therefore, the instruction was legally appropriate.

We turn next to whether the instruction Holliman proposes was factually appropriate. "An instruction on a lesser included crime is factually appropriate if there is sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction." *Phillips,* 312 Kan. at 673. In determining whether his proposed instruction is factually appropriate, we review the evidence in a light most favorable to Holliman. *State v. Berkstresser*, 316 Kan. 597, 602, 520 P.3d 718 (2022).

On occasion, the Kansas Supreme Court has described this standard in greater detail. "A lesser included offense instruction must be provided when there is some evidence, viewed in a light most favorable to the defendant, that would reasonably justify the defendant's conviction for a lesser included crime." *State v. Garcia-Garcia*, 309 Kan. 801, 820, 441 P.3d 52 (2019) (citing *State v. Seba*, 305 Kan. 185, 204, 380 P.3d 209 [2016]); see also K.S.A. 22-3414(3).

We turn then to whether there was some evidence in the present case, viewed in a light most favorable to Holliman, that would reasonably justify a conviction for the lesser included crime of battery on a law enforcement officer, based on Holliman committing

15

the battery by "knowingly causing physical contact . . . in a rude, insulting or angry manner." K.S.A. 21-5413(a)(2), (c)(1)(B).

The Kansas Supreme Court considered a similar situation in *Phillips,* 312 Kan. 643. One of Phillips' charges was a level 4 aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(1)(A), which defined aggravated battery as "[k]nowingly causing great bodily harm to another person or disfigurement of another person." K.S.A. 2017 Supp. 21-5413(b)(1)(A), (g)(2)(A). The district court also instructed the jury as to a lesser included crime—level 7 aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(1)(B), (g)(2)(B). Subsection (b)(1)(B) defined aggravated battery as "knowingly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 2017 Supp. 21-5413(b)(1)(B).

At trial, Phillips requested an additional lesser included crime instruction based on level 7 aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(1)(C). Subsection (b)(1)(C) defined aggravated battery as "knowingly causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 2017 Supp. 21-5413(b)(1)(C); 312 Kan at 668.

The court found Phillips' requested instruction was legally appropriate. It then considered whether the instruction was factually appropriate. "For Phillips' requested instruction to be factually appropriate, there must be evidence from which the jury could have concluded that Phillips caused only physical contact with Hooper without causing bodily harm." 312 Kan. at 673. The court specifically found, "there is nothing in the record to suggest Phillips made only physical contact with Hooper without causing bodily harm." *Phillips*, 312 Kan. at 673. The court noted that the victim's bodily harm was uncontested as he had been shot and spent three days in the hospital. The court concluded

16

that while the proposed lesser included instruction was legally appropriate, it was not factually appropriate, and the district court did not err. 312 Kan. at 673-74.

Here, the evidence at trial was that Holliman used his vehicle to violently strike Honn's patrol vehicle. Immediately following the impact, Honn contacted dispatch asking for an ambulance. He testified that he immediately felt pain, suffered an injury to his knee due to the impact, and suffered superficial burns to his shoulder area due to his air bag deploying. Two medical witnesses that examined Honn that day, an EMT and treating physician, confirmed that Honn suffered bodily harm.

We consider these facts under the appropriate legal standard, which requires a lesser included crime instruction "when there is some evidence, viewed in a light most favorable to the defendant, that would reasonably justify the defendant's conviction for a lesser included crime." *Garcia-Garcia*, 309 Kan. at 820. While here there is indeed "some evidence" of physical contact, the second part of the inquiry is not satisfied in that the evidence would not "reasonably justify a conviction." 309 Kan. at 820. This is because here, as in *Phillips*, there is insufficient evidence that Holliman made contact without causing bodily injury. See 312 Kan. at 672-73.

Even if we were to assume the proposed instruction was both legally and factually appropriate, under the facts of this case, the district court's failure to give the instruction was not clear error. Holliman did not request his proposed instruction at trial and did not object to its omission. When a party fails to object to jury instructions before the district court, an appellate court reviews the instructions to determine if they were clearly erroneous. K.S.A. 22-3414(3). "For a jury instruction to be clearly erroneous, the instruction must be legally or factually inappropriate and the court must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. The party claiming clear error has the burden to show both error and prejudice." *State v. Mendez*, 319 Kan. at 727-28. Put another way, "the prejudice question

17

is not whether a jury *could have* reasonably convicted a defendant on a lesser included offense, but whether the jury *would have* reached a different verdict on the felony conviction without the instructional error." *State v. Berkstresser*, 316 Kan. at 605-06. In considering clear error, we conduct an unlimited review of the entire record. *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014).

As to clear error, Holliman briefly argues that "[g]iven the weakness of the evidence supporting bodily harm, no fully instructed jury would have unanimously convicted. The failure to instruct was clearly erroneous." But Holliman's argument ignores the evidence in the record that Honn clearly suffered bodily harm. It is uncontroverted that Honn suffered injuries to his knee and shoulder area and suffered pain. Holliman has failed to carry his burden of proof to show that the jury would have only found guilt based on physical contact rather than bodily harm. Thus, even if the proposed instruction was legally and factually appropriate, the district court's failure to give it was not clearly erroneous.

We note that in his reply brief, as part of his response to the State's argument on clear error, Holliman "concedes that a lesser included offense instruction of aggravated battery on a law enforcement officer pursuant to K.S.A. 21-5413(d)(2) would have been appropriate." In its brief, the State made the argument that another lesser included crime instruction under K.S.A. 21-5413(d)(2) might have been given as part of its argument as to why the district court did not commit clear error. But in his reply brief, Holliman makes the argument that this third lesser included instruction *should* have been given. Holliman did not raise this argument in his original brief and only briefly mentions it in his reply brief. "A point raised incidentally in a brief but not argued [therein] is [deemed waived or] abandoned." *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020).

Additionally, Kansas Supreme Court Rule 6.05 (2026 Kan. S. Ct. R. at 37) provides that a reply brief is reserved for responding to new material in the appellee's

brief. An appellant may not raise new issues in a reply brief. See *State v. McCullough*, 293 Kan. 970, 984-85, 270 P.3d 1142 (2012) ("'A reply brief is an inappropriate vehicle for raising additional issues.'"). "An argument asserted for the first time in a reply brief does not conform to Rule 6.05." *State v. Keys*, 315 Kan. 690, 701, 510 P.3d 706 (2022). We therefore will not consider whether the district court erred in failing to give a lesser included crime instruction under K.S.A. 21-5413(d)(2).

Finally, we acknowledge that Holliman has advocated that "*Berkstresser's* articulation of the clear error standard ought to be abandoned." Holliman argues that instead, the standard articulated in *State v. Stafford*, 223 Kan. 62, 573 P.2d 970 (1977), should be adopted. In *Stafford*, the Kansas Supreme Court held "[a]n instruction is clearly erroneous when the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility the jury would have returned a different verdict." 223 Kan. at 65. This is a different articulation than that found in in *Berkstresser*, where the court found the correct inquiry is "whether the jury would have reached a different verdict on the felony conviction without the instructional error." *Berkstresser*, 316 Kan. at 606.

At the time Holliman filed his brief, this same argument was before the Kansas Supreme Court in *State v. Ford*, No. 124,236, 2023 WL 1878583 (Kan. App.) (unpublished opinion), *rev. granted* 317 Kan. 847 (2023). The Kansas Supreme Court has since ruled in that case. "Given Ford advocates for a test that is essentially the same as the test set forth in *Berkstresser*, we decline his invitation to overrule it." *State v. Ford*, 320 Kan. at 522.

Holliman acknowledges that we are bound to follow Kansas Supreme Court precedent absent some indication that it is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). We therefore decline to depart from the court's standard as described in *Berkstresser*, 316 Kan. at 605-06.

DID THE PROSECUTOR COMMIT ERROR DURING CLOSING ARGUMENT?

Next, Holliman argues that the prosecutor's comments during closing argument related to bodily harm and eyewitness testimony were made in error.

*Standard of Review*

When considering prosecutorial error claims, appellate courts apply a two-step standard of review:

> "First, considering a prosecutor's statements in context, appellate courts ask whether the prosecutor stepped outside the wide latitude afforded prosecutors 'to conduct the State's case in a manner that does not offend the defendant's constitutional right to a fair trial.' *State v. Brown*, 316 Kan. 154, 164, 513 P.3d 1207 (2022); *State v. Blevins*, 313 Kan. 413, 428, 485 P.3d 1175 (2021)." *State v. Coleman*, 318 Kan. 296, 302, 543 P.3d 61 (2024).

If error is found, we apply the traditional constitutional harmlessness test stated in *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

> "In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016) (quoting *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 [2011]).

When assessing the prosecutor's comments, the reviewing court does not look at the statement in the abstract but in the full context in which it was made. *State v. Wash*, 320 Kan. 646, 663, 571 P.3d 568 (2025).

*The prosecutor's statement on bodily injury did not constitute error.*

Holliman alleges the prosecutor misstated the law in his comments referencing bodily injury:

> "[L]et's talk about Garen Honn and his injuries. The law doesn't say, and you're not instructed, that Garen Honn suffered great bodily harm. The instruction is bodily injury. And bodily injury is what you have. My leg hurt.
>
> This is from State's Exhibit 13, the EMS report, the first responder at the scene. He had pain in his left leg just above the knee. Bruising just above the knee interior. Pulled his pant leg up and showed an injury that was caused by the air bag deployment.
>
> Notwithstanding even that, you heard Dr. Shell come in and testify where Detective Honn went to the hospital to be checked out. And Dr. Shell also said after a short time later Detective Honn had a mild, right shoulder contusion, left knee contusion. Both of them, all of it is consistent with bodily injury."

Though prosecutors have wide latitude in their comments, they may not misstate the law. *State v. Becker*, 311 Kan. 176, 182, 459 P.3d 173 (2020). Holliman argues that the prosecutor misstated the law because "bodily harm requires substantial physical pain or impairment of physical condition." In making this claim, Holliman continues to argue that *Paida v. Leach*, 260 Kan. 292, provides the appropriate definition of "bodily harm." But as we have already discussed, the definition of "bodily injury" from *Paida* is not relevant in this case and is contrary to Kansas law.  See *Robinson*, 306 Kan. at 1027.

The prosecutor's statement concerning bodily injury did not misstate the law and does not constitute error.

*The prosecutor's statement on eyewitness identification did not constitute error.*

In his closing argument, the prosecutor stated:

21

"Chris Bahr, he's close enough because he pulls up next to Jaymie Williams, looks out of his window and he sees this individual. He doesn't remember everything about his clothes but he remembers his face. And that's one thing that you can be sure of in his testimony. He did not hesitate at all in identifying Jimmy Holliman as the man he saw take Jaymie Williams' 2003 white Tahoe."

Holliman alleges this statement was erroneous because it interjected the prosecutor's personal opinion, bolstered the credibility of the witness, and allowed the jury to improperly consider the certainty of eyewitness identification.

In support of his argument that the prosecutor shared his personal opinion with the jury, Holliman cites *State v. Pabst*, 268 Kan. 501, 996 P.2d 321 (2000). In *Pabst*, the prosecutor argued at least eleven times during closing argument that the defendant lied. 268 Kan. at 505. Finding prosecutorial error, the court stated that "Pabst's credibility was crucial to the case," and "[a]ccusing Pabst of lying goes far beyond the traditional wide latitude afforded to prosecutors in closing argument." 268 Kan. at 507.

In contrast, the prosecutor's statement here was not an interjection of opinion, but simply a recitation of the facts that were contained in the evidence presented at trial. On direct examination, Bahr confirmed he was able to identify Holliman without any doubt. The prosecutor's statement, "that's one thing that you can be sure of in his testimony," was simply a reference to Bahr's testimony on direct examination. Bahr did, in fact, identify Holliman without hesitation and was sure of his identification. The prosecutor did not insert his personal opinion with this comment.

Holliman also alleges that the prosecutor's statement, "that's one thing you can be sure of," is error because it improperly bolstered Bahr's credibility. But as discussed above, Bahr testified without hesitation and with particularity to his identification of Holliman. Considered in the context of the entire trial, the prosecutor was commenting on Bahr's eyewitness testimony and not seeking to bolster his credibility.

22

Holliman also argues that the prosecution misstated the law by discussing "the certainty of an eyewitness," contrary to *State v. Mitchell*, 294 Kan. 469, 275 P.3d 905 (2012). In *Mitchell*, the Kansas Supreme Court determined that the language of the jury instruction on eyewitness testimony at that time, "prompts the jury to conclude that an eyewitness identification is more reliable when the witness expresses greater certainty, which places undue weight on eyewitness certainty evidence." 294 Kan. at 481. The court held "it is error to instruct the jury on the degree of certainty factor, and we discourage its future use." 294 Kan. at 481.

The issue before us is not one of jury instruction error, but prosecutorial error. Nonetheless, as we have previously explained, the prosecutor's statement was a fair comment on the evidence presented at trial. Additionally, the jury was provided with instruction No. 8 relating to eyewitness testimony. That instruction clearly informed the jury that it was the State that bore the burden of identification. The instruction also informed the jury of the factors they could consider in determining the accuracy of the eyewitness identification, and those factors did not include the certainty of the witness. The prosecutor's comments in closing argument, when reviewed in the context of summarizing Bahr's testimony, were proper.

DID THE DISTRICT COURT ABUSE ITS DISCRETION IN ORDERING RESTITUTION?

Holliman's final argument is that the district court abused its discretion in ordering restitution.

*Standard of Review*

"Whether a district court's plan of restitution is unworkable is reviewed on appeal for an abuse of discretion. A district court abuses its discretion when its decision turns on a legal or factual error or when its ruling is objectively unreasonable. [Citation omitted.]" *State v. Taylor*, 317 Kan. 364, 368, 530 P.3d 431 (2023).

23

When a defendant challenges an order of restitution as unworkable, it is the defendant's burden to come forward with evidence of his or her inability to pay. *State v. Meeks*, 307 Kan. 813, 820, 415 P.3d 400 (2018).

*Discussion*

Mr. Holliman was ordered to pay a total of $3,776 in total restitution. In reaching this decision, the district court considered reimbursement of the insurance deductible related to the damage to Bahr's truck, reimbursement of the insurance deductible related to the damage to Honn's vehicle, and the loss of Birk's soybean crop. The district court ordered Holliman to pay $25 per month beginning in November 2023.

Generally, "restitution is the rule and a finding that restitution is unworkable is the exception." *State v. Alcala*, 301 Kan. 832, 840, 348 P.3d 570 (2015). To determine if a restitution plan is "unworkable," courts should look at:

> "the defendant's income, present and future earning capacity, living expenses, debts and financial obligations, and dependents. In some circumstances, the amount of time it will take a defendant to pay off a restitution order will also be relevant, especially if the defendant is subject to probation until the restitution is paid in full." *Meeks*, 307 Kan. at 820.

Holliman argues any amount of restitution is unworkable because of his "age, employment history, length of incarceration, and lack of any finances in general." Holliman argues he is 55 years old, only owns the belongings he carries with him, and has not had a steady job in years. He argues the district court abused its discretion because no reasonable person would have ordered him to pay any amount of restitution.

The district court accepted that Holliman would likely be unable to pay the full amount of the damage caused and only imposed $3,776 of the requested $21,098.09 in

24

restitution. The district court noted, "As far as restitution, I believe I need to decide if it's workable and he can get it repaid and it will help cover the victims. Based on his job history, the fact that I've sentenced him to go to prison for 108 months, minus credit [for] time served."

It is Holliman's burden to establish "compelling circumstances" making restitution unworkable. *State v. Taylor*, 317 Kan. at 368. Holliman admitted that his financial circumstances were by his own choice. And the district court ordered Holliman to repay only a small portion of the damages after considering his work history and incarceration. Holliman has not established compelling circumstances to find this amount of restitution unworkable.

As a final note in this appeal, we need not consider Holliman's argument that cumulative error should result in a reversal because here, there was no error. "The cumulative error rule does not apply if there are no errors or only a single error." *State v. Lowry*, 317 Kan. 89, 100, 524 P.3d 416 (2023).

Affirmed.